IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| THYSSENKRUPP STEEL USA, LLC, | : |
|    Plaintiff, | : |
| v. | :     CA 12-00297-C |
| UNITED FORMING, INC., | : |
|    Defendant. | : |

## ORDER

Before the Court are TKS's motion to certify questions to the Supreme Court of Alabama (Doc. 99), along with UFI's response (Doc. 104) and TKS's reply (Doc. 106); and UFI's supplemental brief regarding the Liberty Steele Licensing Issue (Doc. 103), filed with leave of Court (*see* Doc. 102), along with TKS's brief in response (Doc. 105) and UFI's brief in reply (Doc. 108).[1]  Because the Court has determined, as explained more fully below, that two questions of law should be certified to the Alabama Supreme Court, TKS's motion is **GRANTED IN PART**.

### I.     Standard for Certifying a Question of Law.

Certification is "[t]he only method by which federal courts can receive definitive answers to unsettled state law questions." *Moreno v. Nationwide Ins. Co.*, 105 F.3d 1358, 1360-61 (11th Cir. 1997) (certifying one question of law to the Alabama Supreme Court) (citing *Forgione v. Dennis Pirtle Agency, Inc.*, 93 F.3d 758, 761 (11th Cir. 1996)). Therefore, "[w]hen substantial doubt exists about the answer to a material state law question upon which the case turns, a federal court ***should*** certify that question to the

---

[1]     This issue forms the basis for the second question of law to be certified.

state supreme court in order to avoid making unnecessary state law guesses and to offer the state court the opportunity to explicate state law." *Moreno*, 105 F.3d at 1360 (quoting *Forgione*, 93 F.3d at 761) (emphasis added); *accord Cascade Crossing II, LLC v. Radioshack Corp.*, 480 F.3d 1228, 1231 (11th Cir. 2007); *see also Sultenfuss v. Snow*, 35 F.3d 1494, 1504 (11th Cir. 1994) (en banc) (Carnes, J., dissenting) ("Only a state supreme court can provide what we can be assured are 'correct' answers to state law questions, because a state's highest court is the one true and final arbiter of state law.").

Rule 18 of the Alabama Rules of Appellate Procedure provides a means for this Court to certify questions or propositions of Alabama law that are both "determinative" and lack "clear controlling precedents in the decisions of the Supreme Court of this State[.]"  Rule 18(a) states:

> When it shall appear to a court of the United States that there are involved in any proceeding before it questions or propositions of law of this State which are determinative of said cause and that there are no clear controlling precedents in the decisions of the Supreme Court of this State, such federal court may certify such questions or propositions of law of this State to the Supreme Court of Alabama for instructions concerning such questions or propositions of state law, which certified question the Supreme Court of this State, by written opinion, may answer.

ALA. R. APP. P. 18(a); *but see generally Palmore v. First Unum*, 841 So. 2d 233 (Ala. 2002) (declining to answer a certified question the Supreme Court, after further review, found either required it "to interpret federal statutory language with regard to Alabama's tort of bad faith using the relevant federal precedent (something that has already been authoritatively accomplished by the United States Court of Appeals for the Eleventh Circuit)" or "to give a meaningless 'Alabama interpretation' to a phrase found in a federal statute, which would have no binding force or effect in federal court"); *see also*

2

*Stewart Title Guar. Co. v. Shelby Realty Holdings, LLC*, 83 So. 3d 469, 472 (Ala. 2011) (declining to answer a certified question that turned on the construction of an insurance policy: "Construing an insurance policy treads no new ground under Alabama law, and precedent determinative of such an analysis is well settled. Furthermore, and perhaps more importantly, because the district court might determine that the valuation issue can be properly and fairly resolved by looking to the specific language of the policy, answering the certified question would necessitate our fashioning a broad rule with the possibility that it would have no application to the particular facts presented. That possibility also renders us unable to answer the question.") (citations omitted); *Heatherwood Holdings, LLC v. First Commercial Bank*, 61 So. 3d 1012, 1026 (Ala. 2010) (declining to answer a certified question where "existing Alabama law is sufficient to guide the [certifying court]").

## II.     The Underlying Summary Judgment Order.

It is the Court's opinion that TKS's motion for summary judgment presented a question of first impression under Alabama law: whether the use by a general contractor (here, UFI) of a subcontractor (here, for example, Liberty Reinforcing Steel, Inc.[2]) not licensed by the Alabama Licensing Board for General Contractors (the "Licensing Board") to perform a relatively small part of overall work pursuant to a written construction agreement between an owner (here, TKS) and the general contractor (here, the HSM agreement) nullifies the entire agreement between the owner and the general contractor.

---

[2]     While TKS has implicated at least one other unlicensed subcontractor, UFI has admitted that Liberty should have been licensed, but was not.

3

This Court's review of the applicable statue, the Alabama General Contractor's Practice Act (the "AGCPA"), ALA. CODE § 34-8-1, *et seq.*, and relevant cases, including the Alabama Supreme Court's decision in *White-Spunner Construction, Inc. v. Construction Completion Co., LLC*, 103 So. 3d 781 (Ala. 2012), led to the conclusion that it does not:

> Applying these principles, this Court, functioning as an Alabama court, cannot say that the HSM agreement between UFI and TKS is unenforceable because of UFI's separate—unenforceable—agreement with an unlicensed subcontractor. While it is "clear and certain" that contracts with unlicensed contractors are unenforceable in Alabama because such contracts contravene public policy, it is far from "clear and certain" that some work performed by an unlicensed subcontractor for a licensed general contractor taints the general contractor's entire agreement with an owner, nullifying that agreement as against public policy and, thus, allowing an owner "to escape from [its] obligations on the pretext of public policy[.]"

*ThyssenKrupp Steel USA, LLC v. United Forming, Inc.*, ___ F. Supp. 2d ___, 2013 WL 765314, at *8 (S.D. Ala. Jan. 29, 2013) (emphasis in original) (quoting *Milton Constr. Co. v. State Highway Dep't*, 568 So. 2d 784, 788 (Ala. 1990), *overruled in part on other grounds by Ex parte Alabama Dep't of Transp.*, 978 So. 2d 17, 23 (Ala. 2007) (quoting in turn 17 AM. JUR. 2d CONTRACTS § 178 (1964))).

Reaching this conclusion required the Court to examine the implications of the *White-Spunner* decision, which not only acknowledged that Alabama law has long recognized that contracts, whether express or implied, with general contractors not licensed with the Licensing Board are unenforceable as against public policy, but is the first such opinion to also utilize the proposition in *Hinkle v. Railway Express Agency*, 6 So. 2d 417 (Ala. 1942), that a person cannot maintain a cause of action if, in order to establish it, he must also rely ***in whole or in part*** on an illegal or immoral act or

4

transaction to which he is a party. The Court not only found the "in whole or in part" language from *White-Spunner* to be dicta, but also found that TKS failed to address decisions subsequent to *Hinkle*, which clarified the meaning of *Hinkle*'s "in whole or in part" pronouncement. *See, e.g., Oden v. Pepsi Cola Bottling Co. of Decatur, Inc.*, 621 So. 2d 953 (Ala. 1993) ("We interpret the rule in *Hinkle* to bar any action seeking damages based on injuries that were a direct result of the injured party's knowing and intentional participation in ***a crime involving moral turpitude***.") (emphasis added); *see also Lemond Constr. Co. v. Wheeler*, 669 So. 2d 855, 861 (Ala. 1995) (explaining that such a crime "is one involving conduct with an inherent quality of baseness, vileness, or depravity in regard to the duties one owes to society").

Although TKS failed to prove that the entire agreement between it and UFI should be nullified as a matter of law, the Court concluded that TKS is entitled to summary judgment on three counts of UFI's counterclaim to the extent amounts claimed by UFI under those counts "are dependent upon" or "stem from" work performed for UFI by Liberty. This conclusion left open how to value that work for purposes of this litigation. TKS asserts that the contract value of Liberty's unlicensed (and, thus, illegal) work for UFI on the HSM Project, almost $3.5 million, is the amount UFI's claims against TKS should be reduced by; UFI contends, however, that its claims should be reduced by the amount it still owes Liberty—approximately $325,000. The parties have submitted additional briefing on this issue. (*See* Docs. 103; 105; 108.)

### III.     Questions of Law to be Certified.

The threshold issues discussed herein, and explored in far greater detail in the Court's summary judgment order, *see ThyssenKrupp Steel USA*, 2013 WL 765314, at *2-9,

are case "determinative"—if TKS's position is adopted in full, this case is virtually over—and lack "clear controlling precedents in the decisions of the Supreme Court of this State[.]" ALA. R. APP. P. 18(a). Although the Court has done its best to determine how an Alabama court would decide the first question presented, there is no doubt (1) that both questions to be certified address unsettled state law and (2) that the Alabama Supreme Court should be "offere[d] . . . the opportunity to explicate state law." *Forgione*, 93 F.3d at 761. Thus, the Court has considered the proposed questions of law presented by the parties to formulate two questions that are material to a determinative issue in this case that is solely grounded in the application of an Alabama statute[3]:

1. Under the Alabama General Contractor's Practice Act (the "AGCPA"), ALA. CODE § 34-8-1, *et seq.*, where an owner and a general contractor enter into an agreement, does a general contractor's reliance in any part on work performed pursuant to a separate agreement with a subcontractor not licensed under the AGCPA (an "illegal subcontract") prevent the general contractor from recovering the entire contract balance on the agreement between it and the owner?

2. If the answer to question (1) is in the negative, should the contract balance owed to the general contractor be adjusted on account of the illegal subcontract? And, if so, what is the proper adjustment, *i.e.*, should the full illegal subcontract amount be deducted from the contract balance owed by the owner to the general contractor, or only so much of the full illegal subcontract amount, if any, as the general contractor owes to the subcontractor and has included in its claim against the owner?

### IV. Instructions to the Parties and Conclusion.

The Supreme Court has noted that the requirement that it only allow certification of a question if the answer is "determinative of [the] cause[,]"ALA. R. APP. P. 18(a), "correctly leads [it] to view the question presented in its proper context, lest [its] answer

---

[3] *Contra Palmore*, 841 So. 2d 233; *Stewart Title*, 83 So. 3d at 472.

resemble an opinion on an abstract point of law irrelevant to the underlying case[,]" *Palmore*, 841 So. 2d at 235 (noting that any notion that the Supreme Court "should analyze a certified question in a vacuum is negated by the existence of Rule 18(d), which requires that a federal court's certification of a question "shall contain the style of the case [and] ***a statement of facts showing the nature of the cause and the circumstances out of which the questions or propositions of law arise***. . . ." Such information would be not only wholly unnecessary but also potentially corrupting if our analysis demanded complete insulation from context.") (emphasis added).  The parties are accordingly requested to meet and confer and jointly submit a concise Rule 18(d) "statement of facts" consistent with the certified questions of law as framed in this order no later than **April 12, 2013**.[4]

Further, TKS, after recognizing the Court's "discretion in the management of discovery," has requested the Court reconsider its earlier pronouncement that the deadlines set out in the Phase II scheduling order will not be stayed if the Supreme Court decides to answer the questions of law certified.  (Doc. 106 at 4-5.)  For the time being, discovery shall move forward as scheduled, and the parties' efforts with regard to the certification of questions of law shall not amount to good cause to modify the

---

[4]  The parties' proposed statement of facts, along with their briefing if the Supreme Court chooses to answer the questions certified, should assists the Supreme Court if the questions certified seem unclear in any way.  *Cf. Stewart Title*, 83 So. 3d at 471 n.2 ("This Court will rephrase a question certified to it in order to address the basic issue implicated by the question and contemplated by the court in its certification.") (citations and internal quotation marks omitted and punctuation modified).

current schedule.  If the Supreme Court decides to answer the questions certified, the Court may reconsider this position.

**DONE and ORDERED** this the 4th day of April, 2013.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**
